IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY, | NO. |
| Plaintiff, | |
| v. | |
| THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, | |
| Defendant. | |

## COMPLAINT

NOW, comes Plaintiff, United Financial Casualty Company, by and through its attorneys, Dapper, Baldasare, Benson, Behling & Kane, P.C., and files the following Complaint for Declaratory Judgment, averring as follows:

1. This action seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 for the purpose of determining an actual controversy between the parties.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

3. The matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000 and the parties are citizens of different states.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. United Financial Casualty Company ("United") is an insurance company.

6. United is not incorporated in Pennsylvania, nor does it have its principal place of business in Pennsylvania. Rather, United is incorporated in Ohio and has its principal place of business in Ohio.

7.     The Princeton Excess and Surplus Lines Insurance Company ("Princeton") is an insurance company.

8.     Princeton is not incorporated in Pennsylvania, nor does it have its principal place of business in Pennsylvania. Rather, Princeton is incorporated in Delaware and has its principal place of business in New Jersey.

9.     This action seeks declaratory judgment relative to the rights and obligations of United and Princeton relative to claims made by Kenneth Dunbar ("Dunbar") as the result of injuries he sustained due to the operation of a vehicle by Joseph Nice, III ("Nice") – a contractor for Prestige Delivery Systems, Inc. ("Prestige") and Staples, Inc. ("Staples").

10.    By equitable subrogation and contribution, this action also seeks to recover defense counsel attorney fees and costs and expert fees that United has paid for the defense of Prestige, for which Princeton had a joint obligation of more than $75,000 that has not been satisfied.

**A.     Joseph Nice, III, Was Insured Under an Insurance Policy Issued by United.**

11.    United Financial Casualty Company issued Policy No. 06599144-5 to Joseph Nice III at 521 W Shawnee Avenue, Plymouth, Pennsylvania ("United Policy"). A true and correct copy of the United Policy is attached hereto at Exhibit A.

12.    The United Policy provides per person limits of $100,000.

13.    The United Policy contains the following Insuring Agreement, written on Form 6912 (06/10), with respect to "Part I – Liability to Others":

### PART I - LIABILITY TO OTHERS

**INSURING AGREEMENT – LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

(Ex. A.)

    14.    Part I of the United Policy also contains the following definitions relative to the terms used therein:

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

A. When used in Part I - Liability To Others, **insured** means:

1. **You** with respect to an **insured auto**.

2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

   (a) A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.

   (b) A person, other than one of **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), officers or directors (if **you** are a corporation), or a lessee or borrower or any of their

3

        employees, while he or she is moving property to or from an **insured auto**.

    (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer** connected to a power unit that is an **insured auto**. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

    For purposes of this subsection A.2, an **insured auto you** own includes any **auto** specifically described on the **declarations page**.

  3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others.

(Ex. A.)

  15. The United Policy contains the following Other Insurance provision:

    3. **Other Insurance**

      a. For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the **insured auto** which is specifically described on the **declarations page** is a **trailer**, this policy will be primary only if the **trailer** is attached to an **insured auto** that is a power unit **you** own and is specifically described on the **declarations page**, and excess in all other circumstances.

      b. If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

(Ex. A.)

16. The United Policy contains a section entitled "Our Recovery Rights" that includes the following language:

> In the event of any payment under this policy, we are entitled to all the rights of recovery of the person or organization to whom payment was made. That person or organization must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights, and do nothing after the loss or accident to harm our rights.

(Ex. A.)

**B.      Prestige Was Insured Under an Insurance Policy Issued by Princeton.**

17. The Princeton Excess and Surplus Lines Insurance Company issued Policy No. 3FA3CA0000352-00 to "Prestige Delivery Systems, Inc." at 9535 Midwest Avenue #104, Garfield Heights, Ohio ("Princeton Policy"). A true and correct copy of the Princeton Policy is attached hereto at Exhibit B.

18. The Princeton Policy provides limits of $1 million.

19. The Princeton Policy provides coverage for autos described by symbol 8:

> Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

and symbol 9:

> Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

(Ex. B.)

20. The Princeton Policy contains the following provisions, written on Form CA 00 01 03 10, regarding the "Liability Coverage" provided thereunder:

5

> **SECTION II – LIABILITY COVERAGE**
>
> **A. Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

(Ex. B.)

21.　The "Liability Coverage" provisions of the Princeton Policy contain the following regarding the entities that qualify as insureds thereunder:

> **1. Who Is An Insured**
>
> The following are "insureds":
>
> **a.** You for any covered "auto".
>
> **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> **(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not

6

       apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

       **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

       **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

       **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

       **(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

    **c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(Ex. B.)

    22.    The Princeton Policy contains the following Other Insurance provision:

    **5. Other Insurance**

       **a.** For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is:

       **(1)** Excess while it is connected to a motor vehicle you do not own.

       **(2)** Primary while it is connected to a covered "auto" you own.

7

    **b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

    **c.** Regardless of the provisions of Paragraph **a.** above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

    **d.** When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering the same basis.

(Ex. B.)

    23.    The Princeton Policy contains the following Definition:

    **H.** "Insured contract" means:

    \*    \*    \*

    **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

    \*    \*    \*

(Ex. B.)

    24.    The Princeton Policy contains an Additional Insured endorsement, written on Form AU2003(05/97), which provides as follows in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**This endorsement modifies insurance provided under the following:**

8

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

> WHO IS AN INSURED (Section II - LIABILITY COVERAGE - Subsection A.1.) is amended to include as an insured any person or organization for whom you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy, but only to the extent that person or organization qualifies as an insured under WHO IS AN INSURED of Section II - LIABILITY COVERAGE.
>
> Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or agreement specifically requires that this insurance be primary in which case any other insurance available to the additional insured shall be considered excess and non-contributing.

(Ex. B.)

### C. Prestige Assumed the Tort Liability of Staples for "Bodily Injury" in a Courier Delivery Service Agreement.

25. A Courier Delivery Services Agreement existed between Prestige and Staples. A copy of the Courier Delivery Services Agreement is attached at Exhibit C.

26. The Courier Delivery Services Agreement between Prestige (Courier) and Staples states that:

> Courier will indemnify and hold harmless Staples, and each of its directors, officers, employees, agents and representatives, and any subsidiary or affiliate of Staples from any and all losses, costs, and expenses (including legal fees and disbursements), and damages, including incidental and consequential damages which any of them may sustain and become liable for in whole or in part as a result of or arising from any failure to comply with the terms, conditions and covenants in this Agreement, any negligence, willful misconduct or other fault, act or admission of Courier or Courier's employees, subcontractors or others under Courier's control, whether said losses, costs or damages result from injuries to the

9

person or the property, and whether said liability is premised upon contract, private action, administrative enforcement action or upon tort (including without limitation strict liability and product liability). Courier agrees, at its expense and at Staples' option, to defend or assist in the defense of any action against Staples, whether by way of claim, counterclaim or defense for which Courier has an indemnification obligation under this paragraph. Staples shall have the right to approve or reject all proposed settlements of any action covered by this section. The provisions of this paragraph shall survive expiration, cancellation or termination of this Agreement.

(Ex. C.)

D.  **Dunbar Instituted a Lawsuit Against Nice, Prestige, and Staples as the Result of the Injuries he Sustained.**

27. A lawsuit was filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 - 004100 (the "Lawsuit") on June 27, 2014

28. The caption of the Lawsuit was <u>Kenneth Dunbar v. Joseph Nice, III, Prestige Delivery Systems, Inc., and Staples, Inc.</u> A copy of the Complaint from the Lawsuit is attached hereto at Exhibit D.

29. The Lawsuit alleged that Nice was the agent, servant, workman, and/or employee of Prestige and Staples. (<u>See</u> Ex. D at ¶¶ 7, 8.)

30. The Lawsuit alleged that Staples conducts business in Philadelphia County, Pennsylvania and that Prestige conducts business out of an office located in Philadelphia, Pennsylvania. (<u>See</u> Ex. D at ¶¶ 3-6.)

31. The Lawsuit alleged that on January 23, 2014, Nice was in the course and scope of his employment for Prestige and in the process of delivering goods manufactured by Staples to the Mohegan Sun, when he called Dunbar to help fix Nice's "Prestige Delivery Van." (<u>See</u> Ex. D at ¶¶ 9, 10.)

32. The Lawsuit alleged that Dunbar sustained injuries while working on Nice's van as the result of Nice's operation of the van. (See Ex. D at ¶¶ 11-25, 29.)

33. The Lawsuit alleged that Nice's negligence and recklessness in his operation of the van caused Dunbar's injuries. (See Ex. D at Count I.)

34. The Lawsuit alleged that Prestige was vicariously liable for the injuries sustained by Dunbar as the result of the negligence and recklessness of Nice. (See Ex. D at Count II.)

35. The Lawsuit alleged that Prestige was directly liable for the injuries sustained by Dunbar as the result of its negligent supervision, hiring, and retention of Nice. (See Ex. D at Count III.)

36. The Lawsuit alleged that Staples was vicariously liable for the injuries sustained by Dunbar as the result of the negligence and recklessness of Nice. (See Ex. D at Count IV.)

37. The Lawsuit alleged that Staples was directly liable for the injuries sustained by Dunbar as the result of its negligent entrustment of the delivery of its goods to Nice. (See Ex. D at Count IV.)

E. **United Agreed to Provide a Defense to Prestige and Staples in the Lawsuit Subject to a Reservation of Rights.**

38. By correspondence dated April 28, 2014, Athens Insurance Services, the third party claim administrator for Princeton, informed United that Princeton intended to hold United responsible for the defense and investigation of Dunbar's claim.

39. By correspondence dated July 22, 2014, United informed both Prestige and Staples that United would provide them a defense in the Lawsuit subject to a reservation of rights.

40. By correspondence dated April 13, 2015, United informed counsel selected by Princeton for Prestige and Staples – Marks O'Neill – of a resolution of the claim between Nice

and Dunbar that would also resolve any of Dunbar's claims against Prestige and Staples predicated on their vicarious liability for the acts of Nice.

41. United further informed counsel for Prestige and Staples that the settlement would resolve any claims that were potentially covered under the United Policy against Prestige and Staples – i.e., claims for vicarious liability – and eliminate any duty that United may have to indemnify either Prestige or Staples.

42. United also informed Prestige and Staples that United would continue to provide them a defense in the Lawsuit, subject to its ongoing reservation of rights, and offered to allow the attorneys selected by Princeton – Marks O'Neill – to serve as defense counsel.

43. In addition to reserving its rights, United suggested that defense counsel forward the Lawsuit to any other insurer which may afford coverage to Prestige and/or Staples.

44. Marks O'Neill continued to provide a joint defense of all claims against both Prestige and Staples at an agreed hourly rate.

45. Marks O'Neill submitted a budget to Princeton relative to the defense that it was to provide to Prestige and Staples.

46. On or about March 3, 2015, a release was signed in the Lawsuit between Nice and Dunbar that extinguished all claims against Nice, as well as all vicarious liability claims against Prestige and Staples.

47. The vicarious liability claims against Prestige and Staples were discontinued and dismissed from the Lawsuit by Order dated September 1, 2015. (See Ex. E.)

48. As of the date of the discontinuance of the vicarious liability claims against Prestige and Staples, Marks O'Neill allegedly incurred defense costs and fees substantially greater than the budgeted fees for the defense of Prestige and Staples.

12

49. The reasonableness of the fees allegedly incurred in the defense of Prestige and Staples is subject to dispute.

50. On or about September 14, 2015, Dunbar also agreed to settle any remaining claims against Prestige and Staples, and the Lawsuit has been dismissed.

51. Before settling the Lawsuit, Prestige and Staples failed to provide United with copies of other applicable insurance policies, including the Princeton Policy.

52. United, though expressly reserving its right to contest the reasonableness of Marks O'Neill's fees, has made a payment of 50% of the disputed defense fees to Marks O'Neill in a good faith effort to compensate Marks O'Neill for defense costs that are not subject to dispute relative to the defense of Prestige and Staples in the Lawsuit incurred until the September 1, 2015 Dismissal order.

53. United has also paid (a) all of the expert fees and costs submitted by Marks O'Neill for the defense of Staples and Prestige and (b) all of the costs associated with the mediation that took place in the Lawsuit.

54. Upon information and belief, Princeton has not paid any defense fees or costs incurred in the defense of Prestige or Staples for which Marks O'Neill has demanded payment from United and threatened litigation against United.

## COUNT I – DECLARATORY JUDGMENT

### United Financial Casualty Company v.
### The Princeton Excess and Surplus Lines Insurance Company

55. United incorporates by reference thereto Paragraphs 1 through 54 of this Complaint as though the same were set forth fully herein.

56. Prestige qualifies as an insured under the Who Is An Insured provision of the Princeton Policy with respect to the claims alleged in the Lawsuit.

57. Staples qualifies as an insured under the Who Is An Insured provision of the Princeton Policy and Additional Insured endorsement to the Princeton Policy with respect to the claims alleged in the Lawsuit, but only with respect to its vicarious liability.

58. Prestige qualifies as an "insured" under the United Policy with respect to the claims alleged in the Lawsuit, pursuant to the definition of "insured" in the United Policy, but only with respect to its vicarious liability.

59. Staples qualifies as an "insured" under the United Policy with respect to the claims alleged in the Lawsuit, pursuant to the definition of "insured" in the United Policy, but only with respect to its vicarious liability.

60. Pursuant to the Other Insurance provision of the Princeton Policy, because "other insurance" is available under the United Policy for the vicarious liability claims against Prestige, coverage under the Princeton Policy for that claim is excess, while coverage for Prestige's direct liability remains primary under the Princeton Policy.

61. Pursuant to the Other Insurance provision of the Princeton Policy, because Prestige assumed the tort liability of Staples with respect to the claims alleged in the Lawsuit by way of the Courier Delivery Services Agreement, Princeton has a primary obligation with respect to the claim against Staples.

62. Accordingly, with respect to the claims against Prestige and Staples in the Lawsuit:

   a. The United Policy is primary with respect to the vicarious liability claims against Prestige, and the Princeton Policy is excess.

   b. The Princeton Policy is primary with respect to the direct liability claims against Prestige, and no policies are excess.

   c. The Princeton Policy is primary with respect to the vicarious liability claims against Staples, and the United Policy is excess.

      d. The direct liability claims against Staples are not covered under either the United Policy or Princeton Policy.

63. Because both United and Princeton have a primary coverage obligation with respect to the claims alleged against Prestige, both entities had a duty to defend Prestige in the Lawsuit.

64. Pursuant to the Other Insurance Provisions of the United and Princeton Policies, the cost of the defense of Prestige should be allocated based on the proportion of limits offered under the Policies to the total – i.e., United: $1/11^{th}$; Princeton $10/11^{ths}$.

65. Although United had a duty to defend Staples with respect to the claims alleged in the Lawsuit, Princeton, alone, had a primary coverage obligation with respect to that defense as the result of Prestige's assumption of Staples' liability through an "insured contract," such that Princeton, alone, should pay all costs associated therewith.

66. United's defense obligation ceased when the potentially covered claims against Prestige and Staples were dismissed from the Lawsuit on September 1, 2015.

WHEREFORE, United Financial Casualty Company respectfully requests that this Court enter an Order declaring the following:

  (a)  The United Policy provided primary insurance for the vicarious liability claim alleged against Prestige Delivery Services, Inc. in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 - 004100;

  (b)  The Princeton Policy provided excess insurance for the vicarious liability claim alleged against Prestige Delivery Services, Inc. in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 - 004100;

  (c)  The Princeton Policy provided primary insurance for the direct liability claim alleged against Prestige Delivery Services, Inc. in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 - 004100;

(d) The United Policy did not provide insurance for the direct liability claim alleged against Prestige Delivery Services, Inc. in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 - 004100;

(e) The Princeton Policy provided primary insurance for the vicarious liability claim alleged against Staples, Inc. in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 - 004100;;

(f) The United Policy provided excess insurance for the vicarious liability claim alleged against Prestige Delivery Services, Inc. in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 - 004100;

(g) Neither the United Policy nor the Princeton Policy provided insurance coverage for the direct liability claims alleged against Staples, Inc. in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 - 004100;

(h) United and Princeton had a joint, primary duty to defend Prestige with respect to the claims alleged in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 - 004100;

(i) United's duty to defend Prestige ended on September 1, 2015;

(j) The defense obligations of Princeton and United to Prestige with respect to the claims alleged in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket 2014 - 004100 is allocated based on the proportion of limits offered under each Policy to the total – i.e., United: $1/11^{th}$; Princeton $10/11^{ths}$;

(k) United had a duty to defend Staples with respect to the claims alleged in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 – 004100;

(l) Princeton, alone, had a primary duty to defend Staples with respect to the claims alleged in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 – 004100; and

(m) The full cost of the defense of Staples is allocated to Princeton.

## COUNT II – EQUITABLE SUBROGATION AND/OR EQUITABLE CONTRIBUTION

### United Financial Casualty Company v.
### The Princeton Excess and Surplus Lines Insurance Company

67. United incorporates by reference thereto Paragraphs 1 through 66 of this Complaint as though the same were set forth fully herein.

68. United and Princeton had a joint, primary duty to defend Prestige with respect to the claims alleged in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 – 004100.

69. Subject to its reservation of rights and allocation to other insurers with a duty to defend, United had a duty to pay for the defense of the covered and uncovered claims alleged against Prestige in the Lawsuit until such time as the claim was reduced to one that was not covered under the United Policy.

70. Princeton had a primary and concurrent duty to defend Prestige with respect to the claims alleged against Prestige in the Lawsuit.

71. United had a duty to defend Staples with respect to the claims alleged in the Lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, at Docket No. 2014 – 004100.

72. As the result of Prestige's assumption of Staples' liability in an "insured contract," Princeton had a primary obligation to defend Staples.

73. Any duty to defend of United ended on September 1, 2015.

74. Through September 1, 2015, Marks O'Neill allegedly incurred substantially more than the budgeted fees and expenses defending the claims asserted against Prestige and Staples in the Lawsuit.

75. Upon information and belief, Princeton has not paid any defense costs or expert fees incurred in the defense of Prestige or Staples.

76. Subject to its reservation of rights and without waiving its right to challenge the reasonableness of the fees, United alone has made payment to Marks O'Neill in the amount of 50% of the fees incurred until September 1, 2015 for the defense of Prestige and Staples.

77. Pursuant to the Other Insurance provisions of the United and Princeton Policies, Princeton is obligated to pay 91% of the costs associated with the defense of Prestige.

78. Pursuant to the Other Insurance provisions of the United and Princeton Policies, Princeton is obligated to pay 100% of the costs associated with the defense of Staples.

79. As a result of United's payment of defense costs relative to the defense of Prestige and Staples, which were owed by Princeton, United is entitled to equitable subrogation and/or equitable contribution from Princeton for the amounts paid by United and owed by Princeton for the defense of Prestige and Staples.

WHEREFORE, Plaintiff United Financial Casualty Company demands judgment in its favor and against Defendant the Princeton Excess and Surplus Lines Insurance Company in an amount in excess of $75,000.

Respectfully submitted,

DAPPER, BALDASARE,
BENSON, BEHLING & KANE, P.C.

By _____
Robert E. Dapper, Jr. (PA I.D. #46376)
rdapper@dapperlaw.com
Daniel J. Twilla (PA I.D. #93797)
dtwilla@dapperlaw.com
Four Gateway Center, 10th Floor
444 Liberty Avenue
Pittsburgh, PA 15222
(412) 456-5555
(412) 456-2109 – Fax
*Attorneys for Plaintiff,*
*United Financial Casualty Company*