IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED FINANCIAL CASUALTY COMPANY, | : : | CIVIL ACTION |
| Plaintiff, | : : | No. 15-6840 |
| v. | : : | |
| THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE CO., | : : | |
| Defendants. | : | |

MCHUGH, J.

**MEMORANDUM**

This is a dispute between two auto insurers over how to allocate the cost of defending a courier service and its customer in a lawsuit arising out of negligent driving on the part of the courier's deliveryman. The deliveryman's auto carrier settled the case on behalf of the deliveryman, the courier service, and the company employing the courier service. However, it reserved the right to seek contribution from the courier service for the costs of defense. The parties have framed the issue through cross-motions for summary judgement.

More specifically, Staples, Inc. ("Staples") hired Prestige Delivery Systems ("Prestige") to make a delivery, and Prestige assigned the work to one of its drivers, Joseph Nice. In the course of carrying out the assignment, Nice negligently injured one Kenneth Dunbar, who in turn sued Prestige, Staples, and Nice. Nice's auto insurer, United Financial Casualty ("Plaintiff" or "United") litigated and settled the underlying case. Dunbar brought several types of claims against Prestige, Staples, and Nice. First, he sued Nice individually for his negligence; second, he sued Prestige and Staples for Nice's negligence under the theory of respondeat superior; and finally, he brought direct claims against Prestige and Staples for negligent hiring, supervision,

1

and entrustment. United accepts that it alone must pay for Nice's defense.[1] But United alleges that Prestige's carrier, Princeton Excess and Surplus Lines ("Defendant" or "Princeton") must share the cost of defense for the vicarious liability claims against Staples. It further argues that it bears no responsibility for the cost of defending direct claims against Prestige and Staples.[2]

I. **The Policies**

The policies of both carriers provided coverage to Prestige and Staples for the claims raised in Mr. Dunbar's suit. United's policy, issued to Joseph Nice with a coverage limit of $100,000, covered Prestige and Staples as persons or organizations liable for Nice's conduct. United Policy at 6. Princeton's policy, issued to Prestige with a coverage limit of $1,000,000, covered claims against Staples because Prestige contracted to indemnify Staples under the terms of its Courier Delivery Service Agreement. Princeton Policy at 9. The parties partially disagree about which policy was primary as to each defendant for vicarious liability claims, and they completely disagree about whether the United policy covered "direct liability" claims against the companies. I will address each disagreement in turn.

II. **Vicarious Liability Claims: Primacy**

   A. *United's Policy is Primary for Dunbar's Vicarious Claims Against Prestige*

United concedes that it provided primary coverage for Dunbar's vicarious liability claims against Prestige. Compl. at 14. It further concedes that Princeton provided only excess coverage

---

[1] Nice's employment contract with Prestige required that Nice maintain his own insurance, and that his insurer defend, in the first instance, any suit arising out of his conduct while on the job. Exh. 1 to Ans.

[2] Soon after the suit commenced, Princeton contacted United, and stated that it intended to hold United responsible for defending the suit. Princeton also chose the law firm that would handle the defense. Compl. at 11. United agreed to litigate the case, but reserved the right to seek contribution from Princeton at its close. Compl. at 11. In its answer to United's complaint, Princeton alleged without specificity that United had ineffectively reserved this right. Ans. at 7. Princeton did not pursue this argument in subsequent briefing, so I will not address it here.

for these claims, because Prestige did not own the car with which Nice injured Dunbar. *See* Princeton Policy at 9; Compl. at 14. United must therefore pay the full cost of defending Prestige's vicarious liability claims.

### B. *Both Policies are Primary for Dunbar's Vicarious Claims Against Staples*

Both United and Princeton provided primary coverage to Staples for vicarious liability claims. United provided coverage to Staples as a "person or organization" that was liable "for acts or omissions of [Nice]," *United Policy at* 6, and designated its coverage as "primary" because Nice's vehicle was specifically named on the policy's declarations page. United Policy at 22. Princeton's policy created primary coverage for Staples by virtue of the "insured contract" provision in its policy, which guaranteed that "regardless of the provisions" limiting coverage on unowned autos to excess, Princeton's coverage was "primary for any liability assumed under an 'insured contract.'"[3] Princeton Policy at 9. The parties agree that the Courier Delivery Service Agreement signed by Prestige and Staples constitutes an "insured contract" for the purposes of this provision. Compl. at 14, Def's MSJ at 2-3.

Because United and Princeton provided Staples coverage on "the same basis" – in other words, because they both provided it primary coverage – each is responsible for the percentage of total coverage that its policy constitutes. *See* Princeton Policy at 9, United Policy at 22.[4]

---

[3] In its Brief in Opposition to United's Motion for Summary Judgment, Princeton argues briefly and without citation that its coverage of Staples should not be primary because the "insured contract" clause in Princeton's policy is redundant – without the clause, Staples would still receive (excess) coverage under the clause granting coverage to Prestige. *See* Def's Brf. in Opp. at 4-5. This argument is unavailing. The relevant clause is not redundant; it exists to address this exact circumstance: it changes the policy by making it primary – rather than excess – where there is an "insured contract" giving a third party a right to coverage.

[4] Princeton's policy reads: "When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total limits of all the coverage forms and policies covering on the same basis." United's policy reads: "If coverage

3

Under the apportionment clauses explicitly stated in both insurance policies, United is responsible for nine percent (or $\frac{\$100,000}{\$1,100,000}$) and Princeton is responsible for ninety-one percent (or $\frac{\$1,000,000}{\$1,100,000}$) of costs incurred for vicarious liability claims against Staples. When such apportionment clauses dictate indemnity cost, this Circuit has found them to also govern the cost of furnishing a defense. *See Cont'l Ins. Co. v. McKain*, 821 F. Supp. 1084, 1093 (E.D. Pa. 1993), *aff'd*, 19 F.3d 642 (3d Cir. 1994).

Princeton argues that I should allocate defense costs in "equal shares," relying upon *American Casualty Co. of Reading v. PHICO Insurance Co.,* 549 PA 682, 702 A.2d 1050 (Pa. 1997). It overlooks the fact that in *American Casualty*, the Supreme Court explicitly limited its holding, stating that it "shall not apply to those cases where, for instance, there are two or more policies at issue and the policies do not contain irreconcilable and mutually exclusive 'other insurance' provisions." 702 A.2d at 1054, n.7.

This is not a case with mutually repugnant "other insurance" claims; it is the opposite. Both insurance policies in this case directly address apportionment where another insurer has issued parallel coverage. There is no basis upon which to ignore the provisions of the policy. Fortunately, the policies adopt identical formulas and rationales for apportionment. Costs will thus be apportioned based upon their dictates.

### III. Direct Liability Claims: Coverage

---

under more than one policy applies on the same basis, wither excess or primary, we will pay only our proportionate share. Our proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis."

The parties disagree about whether United's extension of coverage to Prestige and Staples renders it liable for claims made against those companies independent from, and in addition to, claims made against Joseph Nice. It appears that no court has directly addressed this issue.

United argues that its policy does not cover Dunbar's claims against Prestige and Staples for negligent hiring, supervision, and entrustment. Though its policy does not explicitly differentiate between direct and vicarious liability, United argues that its language – "acts or omissions *of*" its insured or driver[5] – can only be construed as referring to vicarious liability for the conduct of Mr. Nice. Accordingly, United argues, the coverage does not extend to the separate conduct of any employer of Mr. Nice.

Princeton disagrees, and argues that I should construe the policy through the prism of *Pulleyn v. Cavalier Insurance Corp.*, 505 A.2d 1016 (Pa. Super. Ct. 1986) (Spaeth, J.) and its progeny. *Pulleyn* involved a general liability policy that had an exclusion for operation of a vehicle. The question was whether an employer's decision to entrust a vehicle to its driver could be deemed sufficiently separate from the driver's underlying negligence in operating the vehicle to avoid the exclusion. The court found that because operation of the vehicle remained an essential element of the claim, the vehicle exclusion applied.[6]

The parties have not cited and the court has not found any precedent that directly addresses the particular facts of this case, where both of the policies at issue are commercial auto policies. After much consideration, I am persuaded that United's analysis is correct. As with

---

[5] United Policy at 6 (emphasis added).

[6] The late Judge Huyett of this Court discussed *Pulleyn* at length in *Motorists Mutual Insurance Co. v. Kulp*, 688 F. Supp. 1033, 1036-1037, (E.D. Pa. 1988), *aff'd,* 866 F.2d 1411 (3d Cir. 1988), and the Superior Court cited his analysis with approval in *Wilcha v. Nationwide Mutual Fire Insurance Co.,* 877 A.2d 1254, 1264 (Pa. Super. Ct. 2005) (887 A.2d 1263); *see also Allstate Prop. & Cas. Insurance Co. v. Filachek,* 2011 W.L. 211219 (E.D. Pa. 2011) (Sanchez, J.). Each of these cases involved how to apply vehicle exclusions in non-auto policies.

any contract issue, the touchstone in any coverage dispute is the language of the policy itself. *See AAA Mid-Atl. Ins. Co. v. Ryan*, 624 Pa. 93, 103, 84 A.3d 626, 633 (Pa. 2014). The "Definitions" section of the United policy explicitly limits its responsibility to provide coverage to others to acts or omissions "of" the named insured or a driver of the insured vehicle, i.e., to claims for vicarious liability. Princeton fails to address this express language in a meaningful way. The trigger for coverage is conduct on the part of the policy holder or an authorized driver. As a matter of simple logic, there is no coherent factual scenario where Nice, the delivery man, can be deemed negligent for hiring, or failing to supervise, *himself*. The fact that the policy does not specifically distinguish between "direct" and "vicarious" liability makes no difference, so long as wording of the policy is otherwise clear.

The cases on which Princeton relies deal with the scope of exclusions for vehicle liability in non-auto policies. I fail to see the relevance of this line of cases in a situation where the United policy on its face cannot be construed in the manner that Princeton suggests. There is no need to import principles adopted for the purpose of resolving coverage disputes involving exclusions in non-auto policies where the operative language of the policy before me sufficiently defines the scope of coverage. Furthermore, as noted above, both policies here are automobile policies, and the policy issued by Princeton was a commercial auto policy explicitly meant to protect Prestige from liability connected to the operation of vehicles in its business. Given the specific question before me – how to allocate responsibility between two carriers, both of which have issued commercial vehicle policies – principles adopted in the separate context of exclusions in non-auto policies confuse the issue.

I conclude that the plain language of United's policy does not create coverage for the direct claims against Prestige and Staples. And to the extent that there is any ambiguity in the

contract, my conclusion is buttressed by the reasonable expectations doctrine. Under Pennsylvania law, "the parties' reasonable expectations are to be the touchstone of any inquiry into the meaning of an insurance policy." *Bensalem Twp. v. Int'l Surplus Lines, Ins. Co.,* 38 F.3d 1303, 1309 (3d Cir. 1994). Although the language of the policy normally provides the best indication of the parties' reasonable expectations in forming the contract, the totality of the insurance transaction must be examined to ascertain the reasonable expectations of the insured. *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 903 (3d Cir. 1997) (*as amended*). The wording of the policy, extending to acts "of" Nice, makes it difficult to believe that United reasonably expected it was issuing coverage protecting third parties for the decision to hire him. It is language that defines vicarious liability in the classical sense. In contrast, all of the cases on which Princeton relies involve policies where it is clear that the carrier explicitly sought to exclude coverage for any vehicle-related claim. Accordingly, as to the direct claims against Prestige and Staples, I hold that only Princeton's coverage applies.

## IV. Relief Sought

At this stage, it is unclear what further evidence is required for the Court to enter a final order, particularly to the extent that the parties seek a specific dollar allocation. With a single firm defending and ultimately resolving all of the claims against all three defendants, and with the vicarious claims apparently having been settled before the direct claims, it is not apparent what costs and fees were incurred when and in defense of whom. The parties shall, within 20 days, submit further briefing as to their respective positions on the appropriate final resolution of this matter.

        /s/ Gerald Austin McHugh
        United States District Judge